EDGAR H. HAUG (Admitted *pro hac vice*)
ANGUS CHEN (Admitted *pro hac vice*)
HAUG PARTNERS LLP
745 Fifth Avenue
New York, New York 10151
Telephone: (212) 588-0800
Facsimile: (212) 588-0500
E-mail: ehaug@haugpartners.com
E-mail: achen@haugpartners.com

JONATHAN A. PATCHEN (SBN 237346)
TAYLOR & PATCHEN, LLP
One Ferry Building, Suite 355
San Francisco, California 94111
Telephone: (415) 788-8200
Facsimile: (415) 788-8208
E-mail: jpatchen@taylorpatchen.com

Attorneys for Defendants
NEKTAR THERAPEUTICS, BAXALTA INC.,
AND BAXALTA US INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

BAYER HEALTHCARE LLC,

Plaintiff,

v.

NEKTAR THERAPEUTICS, BAXALTA INCORPORATED, and BAXALTA US INC.,

Defendants.

Case No.: 5:17-CV-05055-LHK

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER THIS ACTION TO THE DISTRICT OF DELAWARE**

Date: January 25, 2018
Time: 1:30 PM

Honorable Lucy H. Koh

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. THERE IS NO PERSONAL JURISDICTION OVER BAXALTA INC. AND BAXALTA US INC. ..... 1

A. Bayer Concedes the Absence of General Jurisdiction ..... 2

B. Bayer Does Not Establish a *Prima Facie* Case of Specific Jurisdiction ..... 2

1. Bayer Has Not Shown How Its Claims Arise from Baxalta Inc. and Baxalta US Inc.'s Alleged Contacts with this District ..... 2

2. Bayer Does Not Show that Baxalta Inc. or Baxalta US Inc. Took Any Affirmative Enforcement Action in this District ..... 4

3. The Court Should Deny Bayer's Request for Jurisdictional Discovery ..... 5

III. VENUE IS IMPROPER IN THIS DISTRICT ..... 6

A. This Court Should Analyze Venue under the Patent Venue Statute ..... 6

B. Venue Would Be Improper in this District under § 1400(b) ..... 7

C. Bayer Fails to Demonstrate that Venue Would Be Proper under § 1391 ..... 7

IV. SINCE BAXALTA INC. AND BAXALTA US INC. CANNOT BE JOINED, THE ACTION SHOULD BE DISMISSED PURSUANT TO RULE 19 ..... 8

V. IN THE ALTERNATIVE, THIS ACTION SHOULD BE TRANSFERRED TO THE DISTRICT OF DELAWARE ..... 8

A. Transfer Will Avoid Further Considerations of Jurisdiction and Venue ..... 8

B. Transfer to Delaware Is Appropriate Because the Delaware Actions Were Filed First ..... 9

C. Even If the Court Finds this Is the First-Filed Action, Exceptions to the First-to-File Rule Apply Here and Compel Transfer to Delaware ..... 11

D. Bayer's Forum Shopping Justifies Departing from the First-to-File Rule ..... 12

E. The Convenience Factors Favor Transfer ..... 13

VI. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

Cases

*Akro Corp. v. Luker*,
45 F.3d 1541 (Fed. Cir. 1995) ........ 5

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
946 F.2d 622 (9th Cir. 1991) ........ 12

*Barnes & Noble, Inc. v. LSI Corp.*,
823 F. Supp. 2d 980 (N.D. Cal. 2011) ........ 13

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*,
444 F.3d 1356 (Fed. Cir. 2006) ........ 4

*Bristol-Myers Squibb Co. v. Superior Court* ("*BMS*"),
137 S. Ct. 1773 (2017) ........ 1, 2, 3

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) ........ 2

*Cassirer v. Kingdom of Spain*,
580 F.3d 1048 (9th Cir. 2009) ........ 8

*Doe v. Unocal Corp.*,
248 F.3d 915 (9th Cir. 2001) ........ 2, 5

*Fourco Glass Co. v. Transmirra Prods. Corp.*,
353 U.S. 222 (1957) ........ 6

*Genentech, Inc. v. Eli Lilly & Co.*,
998 F.2d 931 (Fed. Cir. 1993) ........ 12

*Genetic Implant Sys., Inc. v. Core-Vent Corp.*,
123 F.3d 1455 (Fed. Cir. 1997) ........ 5

*Glaxo Grp. Ltd. v. Genentech, Inc.*,
No. C 10-00675 JSW, 2010 WL 1445666 (N.D. Cal. Apr. 12, 2010) ........ 13

*In re Cray Inc.*,
No. 17-129, 2017 U.S. App. LEXIS 18398 (Fed. Cir. Sept. 21, 2017) ........ 6

*In re Mobile Telecommc'ns Techs., LLC*,
243 F. Supp. 3d 478 (D. Del. 2017) ........ 9

*Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*,
544 F. Supp. 2d 949 (N.D. Cal. 2008) ........ 9

*Korody-Colyer Corp. v. General Motors Corp.*,
828 F.2d 1572 (Fed. Cir. 1987) ........ 11

*MEC Resources, LLC v. Apple, Inc.*,
No. 17-223, 2017 WL 4102450 (D. Del. Sept. 15, 2017) ........ 14

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843 (2014) .......... 6

*Micron Tech., Inc. v. MOSAID Techs., Inc.*, 518 F.3d 897 (Fed. Cir. 2008) .......... 12

*New World Int'l, Inc. v. Ford Global Techs., LLC*, 859 F.3d 1032 (Fed. Cir. 2017) .......... 4

*Nexans, Inc. v. Belden, Inc.*, 966 F. Supp. 2d 396 (D. Del. 2013) .......... 11

*Optical Recording Corp. v. Capitol-EMI Music, Inc.*, 803 F. Supp. 971 (D. Del. 1992) .......... 14

*Peterson v. Highland Music, Inc.*, 140 F.3d 1313 (9th Cir. 1998) .......... 8

*Phaneuf v. Indonesia*, 106 F.3d 302 (9th Cir. 1997) .......... 9

*Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) .......... 3

*Rockwell Int'l Corp. v. United States*, 549 U.S. 457 (2007) .......... 11

*Rupert v. Bond*, No. 12-5292-LHK, 2013 WL 5272462 (N.D. Cal. Sept. 17, 2013) .......... 5

*San Francisco Tech., Inc. v. Adobe Sys., Inc.*, No. CV 10-01652 RS, 2010 WL 1640397 (N.D. Cal. Apr. 19, 2010) .......... 8

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) .......... 1

*Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422 (2007) .......... 5, 8

*TC Heartland LLC v. Kraft Foods Grp. Brands, LLC*, 137 S. Ct. 1514 (2017) .......... 6, 7

*Tessera, Inc. v. Broadcom Corp.*, No. 16-379, 2017 WL 1065865 (D. Del. Mar. 21, 2017) .......... 15

Statutes

28 U.S.C. § 1391 .......... 1, 6, 7, 8

28 U.S.C. § 1400 .......... 1, 6, 7

28 U.S.C. § 1406 .......... 6

Rules

Fed. R. Civ. P. 12(b)(3) .......... 7

Fed. R. Civ. P. 12(h)(1)(B)(i) .......... 7

Fed. R. Civ. P. 19 .......... 1

## I. INTRODUCTION

This lawsuit should be dismissed or, in the alternative, transferred to Delaware to join two earlier-filed actions concerning the same parties and the same general subject matter—including an action concerning the same Seven Patents at issue here—for multiple reasons.

First, this Court lacks personal jurisdiction over Baxalta Inc. and Baxalta US Inc. Bayer concedes that the Court lacks general jurisdiction over both Defendants, and has failed to show how any of its claims arise out of their claimed California contacts. *Bristol-Myers Squibb Co. v. Superior Court* ("*BMS*"), 137 S. Ct. 1773, 1780 (2017) (explaining that specific jurisdiction requires that "'the ***suit***' must 'aris[e] out of or relat[e] to the defendant's contacts with the ***forum***'") (emphasis in original)).

Second, venue is improper in this District. Neither Baxalta Inc. nor Baxalta US Inc. reside in this District, *see* 28 U.S.C. § 1400(b), § 1391(b)(1); nor did any of the events or omissions giving rise to Bayer's claim occur here, *see* § 1391(b)(2).

Third, because both Baxalta Inc. and Baxalta US Inc. are concededly persons who must be joined if feasible and because they cannot properly be joined, dismissal of this action as to all parties is required under Federal Rule of Civil Procedure 19.

Finally, in the alternative, this action should be transferred to the District of Delaware, where joinder of all parties is feasible and where both Bayer and Defendants have already filed related claims concerning Factor VIII protein products. Transfer is appropriate both to avoid the jurisdictional and venue questions raised by this motion and to avoid duplicative litigation (and potentially inconsistent outcomes) in widely separated forums concerning common factual issues and the same general subject matter.

## II. THERE IS NO PERSONAL JURISDICTION OVER BAXALTA INC. AND BAXALTA US INC.

This Court does not have personal jurisdiction over either Baxalta Inc. or Baxalta US Inc. Bayer has the burden to demonstrate that jurisdiction is proper as to each defendant, *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004), and must make a *prima facie* showing of jurisdictional facts that, if true, would support jurisdiction over defendants.

*Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). As a matter of law, Bayer failed to meet that burden.

**A. Bayer Concedes the Absence of General Jurisdiction**

Bayer does not argue that this Court would have general jurisdiction over Baxalta Inc. and Baxalta US Inc. (*See generally* ECF No. 36 ("Br.") 4-14 (omitting any mention of general jurisdiction).) Nor could it do so, since it is undisputed that Baxalta Inc. and Baxalta US Inc. are incorporated in Delaware and have their principal places of business in Illinois. (*See* ECF No. 33 ("Mot.") 8-9.)

**B. Bayer Does Not Establish a *Prima Facie* Case of Specific Jurisdiction**

To establish specific jurisdiction, a plaintiff must show: (1) that the defendant has "purposefully established 'minimum contacts'" with the forum, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985), and (2) that the ***suit*** "arise[s] out of or relate[s] to the defendant's contacts with the ***forum***." *BMS*, 137 S. Ct. at 1780 (quotations and alterations omitted, emphasis in original). Bayer alleges that Defendants omitted "Baxalta's meaningful ties" to this District and ignored collaborations with Nektar. But Bayer fails to show that this suit arose from or relates to Baxalta Inc.'s or Baxalta US Inc.'s alleged contacts with this District

***1. Bayer Has Not Shown How Its Claims Arise from Baxalta Inc. and Baxalta US Inc.'s Alleged Contacts with this District***

Bayer focuses on what it refers to as "Baxalta's partnership with Nektar" to argue that Baxalta Inc. and Baxalta US Inc. should be subject to specific personal jurisdiction here. (Br. 10-11.) Specifically, Bayer argues that "Baxalta" has "ongoing contacts" in this District because allegedly "Baxalta" has a license agreement with Nektar for the Seven Patents, pays royalties to Nektar under that license, "apparently killed off [a] deal" that Bayer sought with Nektar to sublicense the Seven Patents, "purchased biologic materials from Netkar for ['Baxalta's' product] Adynovate®," and "has processed its precursor products for Adynovate®." (Br. 10-11.)

As an initial matter, these alleged actions do not represent purposeful contacts with this District by Baxalta Inc. and Baxalta US Inc. concerning the claims at issue. For example, Bayer alleges that it "approached Nektar" in 2013 "[i]n an attempt to avoid litigation" in an "informal

lunch meeting" and a "formal encounter." (Br. 10-11.) Bayer states that "Nektar informed Bayer that [its] exclusive license with Baxalta left it with no sublicensing authority" and speculates that "Baxalta apparently killed off" its requested deal to sublicense the patents. (Br. 11.) But Bayer's alleged interactions with Nektar cannot possibly represent a purposeful contact by either Baxalta Inc. or Baxalta US Inc. in this District. If Bayer's logic were adopted, any infringer could manufacture specific jurisdiction over a licensee by initiating conversations in a forum with the patent's owner. Bayer cites no authority to support such a counterintuitive result.

More important, even if Bayer's account of "Baxalta's" contacts were correct, none of those contacts could support specific jurisdiction under *BMS* because none of them give rise to Bayer's claims here, which seek a declaratory judgment of noninfringement concerning ***Bayer's*** product BAY 94. (ECF No. 30 ("New California Complaint") ¶ 1.) For example, Bayer makes much of its allegation that "Baxalta" pays royalties to Nektar under a license agreement which contains a consent to jurisdiction in California for claims arising out of that agreement. But Bayer is not a party to that agreement, and its noninfringement claims clearly do not arise in any way from it. Accordingly, that agreement cannot be the basis for jurisdiction here.

Bayer attempts to avoid this basic jurisdictional defect by alleging that jurisdiction is proper because it is "wrongfully accused as a resident of this District, so the brunt of the harm is felt here" because "Baxalta alleges that BAY 94" infringes the Seven Patents and "seeks injunctive relief against Bayer[]." (Br. 11 (citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019-20 (9th Cir. 2002)).) Bayer is apparently referring to the 2017 Delaware Action, but that action "simply was not aimed intentionally at [this District], knowing that the harm was likely to be caused there." *Rio*, 284 F.3d at 1020 (quotation omitted). Instead, that action was filed in Delaware against Bayer, a Delaware corporation whose principal place of business is in New Jersey. (ECF No. 33-1 ("Chen Decl.") Ex. 2 ¶¶ 7, 10.) "Because the ***relevant*** conduct occurred entirely in [Delaware] the mere fact that this conduct affected [a plaintiff] with connections to the forum State [does] not suffice to authorize jurisdiction." *BMS*, 137 S. Ct. at 1781-82 (emphasis in original, alterations and quotation omitted). Defendants' action against Bayer in Delaware was

certainly not aimed at this District, and cannot justify specific jurisdiction over Baxalta Inc. and Baxalta US Inc.

### 2. *Bayer Does Not Show that Baxalta Inc. or Baxalta US Inc. Took Any Affirmative Enforcement Action in this District*

Bayer does not mention, let alone distinguish, *BMS*, even though Defendants cited this Supreme Court precedent to show that specific jurisdiction is missing here. (Mot. 10.) Instead, Bayer argues that "[t]he Federal Circuit's controlling precedent leaves no doubt" that jurisdiction is satisfied. (Br. 11.) Specifically, Bayer cites *Breckenridge*, *Akro*, and *Genetic Implant* to allege that the Nektar license agreement establishes jurisdiction over Baxalta Inc. and Baxalta US Inc. But these cases do not support jurisdiction here.

Notably, the factual scenarios in Bayer's cases differ fundamentally from what Bayer alleges here. In each case, a non-resident patent owner or licensee sent cease and desist letters into the forum that were directed at a company based in the forum, and the issue was whether such actions—combined with other contacts in the forum—justified jurisdiction. For example, in *Breckenridge* the court explained that "the crux of the due process inquiry should focus first on whether the defendant has had contact with the parties in the forum state ***beyond the sending of cease and desist letters*** or mere attempts to license the patents at issue there." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1366 (Fed. Cir. 2006) (emphasis added). As the Federal Circuit recently explained, "[w]hile the act of sending cease and desist letters is insufficient by itself to trigger a finding of personal jurisdiction, other activities by the defendant, ***in conjunction with cease and desist letters***, may be sufficient." *New World Int'l, Inc. v. Ford Global Techs., LLC*, 859 F.3d 1032, 1038 (Fed. Cir. 2017) (emphasis added). "One such activity that this court has recognized . . . is the grant of an exclusive license to a licensee that resides or regularly does business in the forum." *Id.* (citing *Breckenridge*, 444 F.3d at 1366). Thus, a license agreement alone is insufficient to confer specific jurisdiction; there must ***also*** be an ***affirmative enforcement act*** directed to the forum, such as a cease and desist letter.

This threshold requirement of an affirmative enforcement act directed to the forum state is borne out in each case Bayer cites. *See, e.g.*, *Breckenridge*, 444 F.3d at 1359-60 (finding that

"between ten and twenty" warning letters were sent to customers in forum state that was also plaintiff's principal place of business); *Akro Corp. v. Luker*, 45 F.3d 1541, 1542-43 (Fed. Cir. 1995) (finding that six letters were targeted to forum state in which plaintiff was also incorporated); *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1457 (Fed. Cir. 1997) (finding that three letters were sent to the forum state, which was also plaintiff's state of incorporation).

In this case, in contrast, Bayer fails to make a threshold showing of any affirmative enforcement activity targeted at a company incorporated or headquartered in this forum. Bayer is incorporated in Delaware and based in New Jersey (New California Complaint ¶ 3), and Bayer has not alleged that Defendants directed any targeted enforcement activity to California. Accordingly, even under Bayer's authorities specific jurisdiction is unavailable in California.

**3. *The Court Should Deny Bayer's Request for Jurisdictional Discovery***

Bayer states that it has presented "evidence sufficient to prove personal jurisdiction." (Br. 14.) For purposes of this motion, Defendants have not disputed any of Bayer's alleged facts. "Where, as here, the facts upon which jurisdiction turns are undisputed, the matter presents a pure question of law." *Akro*, 45 F.3d at 1543. Thus, Bayer's requested jurisdictional discovery should be denied because the facts bearing on the question of jurisdiction are not controverted and "further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Rupert v. Bond*, No. 12-5292-LHK, 2013 WL 5272462, at *15 n.9 (N.D. Cal. Sept. 17, 2013) (quotation omitted). As a matter of law, Bayer failed to make a *prima facie* showing of jurisdiction over either Baxalta Inc. or Baxalta US Inc. *Unocal*, 248 F.3d at 922. Accordingly, this case should be dismissed. But to the extent the Court considers ordering jurisdictional discovery, Defendants suggest that the Court instead "take[] the less burdensome course" and transfer this case to Delaware—a forum where personal jurisdiction ***unquestionably exists*** and for which there would be no need to subject the parties and the Court to the time, expense, delay, and distraction of jurisdictional discovery. *See, e.g.*, *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007).

## III. VENUE IS IMPROPER IN THIS DISTRICT

Bayer has not met its burden to show that venue is proper in this District under either the patent venue statute, 28 U.S.C. § 1400(b), or the general venue statute, § 1391. Thus, venue is improper and this action should be dismissed or transferred to Delaware. § 1406(a).

### A. This Court Should Analyze Venue under the Patent Venue Statute

The patent venue statute should be applied to this patent action, which seeks a declaratory judgment of patent non-infringement. In *TC Heartland*, the Supreme Court reversed long-standing Federal Circuit venue precedent and reiterated that "§ 1400(b) 'is the sole and exclusive provision controlling venue in patent infringement actions.'" *TC Heartland LLC v. Kraft Foods Grp. Brands, LLC*, 137 S. Ct. 1514, 1519-20 (2017) (quoting *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957)); *see also In re Cray Inc.*, No. 17-129, 2017 U.S. App. LEXIS 18398, at *8-9 (Fed. Cir. Sept. 21, 2017) (discussing how "the world has changed since 1985" and that "in the wake of the Supreme Court's holding in *TC Heartland*, effectively reviving Section 1400(b) as the focus of venue in patent cases, we must focus on the full and unchanged language of the statute"). The Court further explained that "[t]he fact that § 1391(c) by 'its terms' embraced 'all actions' was not enough to overcome the fundamental point that Congress designed § 1400(b) to be 'complete, independent and alone controlling in its sphere.'" *TC Heartland*, 137 S. Ct. at 1519 (quoting *Fourco*, 353 U.S. at 228). The Court's reasoning naturally applies to this declaratory judgment patent action, as the burden to prove patent infringement remains with Defendants just as it would be in any other patent infringement suit. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 849 (2014). To argue against such reasoning, Bayer relies on alleged Congressional intent and engages in a statutory construction exercise to argue that the patent venue statute should not apply. (Br. 15-16.) But Bayer acknowledges that *TC Heartland* "reaffirm[ed] its precedential opinions that the Patent Venue Statute is 'the exclusive provision controlling venue in ***patent infringement proceedings***,' i.e., '***actions to enforce patent rights***.'" (Br. 16 (quoting *TC Heartland*, 137 S. Ct. at 1518) (emphasis in original).) And Bayer cannot deny that it filed this action to determine whether Bayer's BAY 94 infringes the Seven Patents, i.e., whether Defendants' patent rights may be enforced against BAY 94. Bayer's protestations to

the contrary are a distinction without a difference. Venue for this patent infringement proceeding should be evaluated under § 1400(b).

**B. Venue Would Be Improper in this District under § 1400(b)**

Bayer has not shown that venue would be proper under either clause of the patent venue statute. Bayer does not contest that venue is improper under the first clause of § 1400(b), i.e., "where the defendant resides." Indeed, all of the parties are incorporated in Delaware and, therefore, do not "reside" in this District under § 1400(b). *TC Heartland*, 137 S. Ct. at 1517. Bayer also has not shown that venue is proper under the second clause of § 1400(b), i.e., "where the defendant has committed acts of infringement ***and*** has a regular and established place of business." § 1400(b) (emphasis added). Bayer has not alleged that Defendants have committed any act of infringement. Bayer argues that it should be considered the "defendant" under § 1400(b) because it is seeking a non-infringement judgment. (Br. 17.) But this argument is meritless because improper venue is an affirmative defense to protect the named defendants in a lawsuit. *See* Fed. R. Civ. P. 12(b)(3) (showing improper venue as an affirmative defense); *see also* Fed. R. Civ. P. 12(h)(1)(B)(i) (setting forth that a defendant waives objections to improper venue if not brought in a motion to dismiss before a pleading). Venue statutes are not meant to protect named plaintiffs since they choose the venue. Thus, the statute's reference to "defendant" applies to Defendants here. Accordingly, venue is improper in this District under § 1400(b).

**C. Bayer Fails to Demonstrate that Venue Would Be Proper under § 1391**

Venue is also not proper in this District under the general venue statute. Bayer has not shown that venue is proper under § 1391(b)(1) for Baxalta Inc. and Baxalta US Inc. because, as shown above, neither is subject to personal jurisdiction in this District. Bayer has also failed to show that venue is proper for Baxalta Inc. and Baxalta US Inc. under § 1391(b)(2), i.e., where "a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property that is the subject of the action is situated." Again, as shown above, Bayer has failed to demonstrate how either Baxalta Inc. or Baxalta US Inc. engaged in any conduct within this District that gave rise to Bayer's claims. Instead, the case or controversy supporting Bayer's declaratory judgment action against Baxalta Inc. and Baxalta US Inc. is largely based on its filing

its BLA No. 125661 with the FDA seeking approval to market BAY 94. (*E.g.*, New California Complaint ¶¶ 66, 90-93, 102.) This infringing act occurred at Bayer's New Jersey corporate headquarters—not this District—based on Bayer's own admissions. (*See* Br. 5; Patchen Decl. Ex. 1 at 9.) Thus, Bayer has not shown that venue is proper under § 1391(b)(2).

## IV. SINCE BAXALTA INC. AND BAXALTA US INC. CANNOT BE JOINED, THE ACTION SHOULD BE DISMISSED PURSUANT TO RULE 19

In their moving papers, Defendants argued that the Baxalta parties were necessary and indispensable to the dispute. (*See* Mot. 15 (citing Fed. R. Civ. Proc. 19(b)).) Bayer does not dispute this in its opposition, conceding the argument by its silence. Thus, unless personal jurisdiction is established and venue is proper as to all Defendants, the entire action should be dismissed in favor of the District of Delaware where all parties can be joined.

## V. IN THE ALTERNATIVE, THIS ACTION SHOULD BE TRANSFERRED TO THE DISTRICT OF DELAWARE

If this action is not dismissed, it should be transferred to Delaware. The reasons for transfer are compelling.

### A. Transfer Will Avoid Further Considerations of Jurisdiction and Venue

First, transfer will avoid the need to decide the jurisdictional and venue issues presented above. *San Francisco Tech., Inc. v. Adobe Sys., Inc.*, No. CV 10-01652 RS, 2010 WL 1640397, at *2-3 (N.D. Cal. Apr. 19, 2010) (deferring jurisdictional determination in favor of transfer); *see generally Sinochem*, 549 U.S. at 436 ("[W]here subject-matter or personal jurisdiction is difficult to determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the court properly takes the less burdensome course."). Bayer offers no good reason why this Court should address these issues rather than transfer the action. Indeed, should the Court retain the case here, that would create factual issues regarding jurisdiction and venue that would increase the scope of trial and that would embed appellate issues at the very inception of the case. *See, e.g.*, *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1319 (9th Cir. 1998) (adopting rule that jurisdictional issue should be contested after a motion to dismiss in order to assert preponderance of evidence standard on appeal); *Cassirer v. Kingdom of Spain*, 580 F.3d 1048, 1052, 1054 (9th Cir. 2009) (denying interlocutory appeal of motion to dismiss for lack of personal jurisdiction

because there had been no final judgment and the issue was not immediately appealable); *Phaneuf v. Indonesia*, 106 F.3d 302, 304, 309 (9th Cir. 1997) (denying interlocutory appeal of motion to dismiss for lack of venue). Such wasted effort—both actual and potential—is avoided by a transfer to the District of Delaware.

**B. Transfer to Delaware Is Appropriate Because the Delaware Actions Were Filed First**

Second, transfer is justified here because the first-filed actions in this matter are pending in Delaware. Contrary to Bayer's assertion, Defendants did not argue that the 2016 Delaware Action is first-filed because it merely "relates to the same technical field" as the New California Complaint. (Br. 21.) Rather, underlying facts in both actions "substantially overlap for purposes of the first-to-file rule, because they all concern common subject matter regarding Factor VIII protein products." (Mot. 22.) Bayer's New California Complaint and the 2016 and 2017 Delaware Actions discuss the same alleged facts and potential witnesses. (Mot. 22.) Since the Delaware Actions were filed earlier, they satisfy the first-to-file rule. *See Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 957-58 (N.D. Cal. 2008) (stating that "the 'first-to-file rule' is satisfied by a sufficient similarity of issues"); *In re Mobile Telecommc'ns Techs., LLC*, 243 F. Supp. 3d 478, 485 (D. Del. 2017) ("[T]he primary focus of the analysis is on whether the issues in the current matter 'concern the same set of facts' as in the first-filed action.").

Bayer's own filings confirm the primacy of the Delaware actions. Bayer raised facts and issues common to these disputes in the 2016 Delaware Action, e.g., Factor VIII protein products used to treat hemophilia A, specifically pegylated Factor VIII; Bayer's alleged prior research regarding pegylated Factor VIII; the research collaboration between Bayer and Nektar concerning pegylated Factor VIII protein products; and disputes in Europe concerning Bayer's and Nektar's patent filings relating to pegylated Factor VIII protein products. (*See* Chen Decl. Ex. 1 ¶¶ 14-17, 30-37.) Bayer asserts that "the heart of this dispute" between the parties concerns the "ongoing patent disputes . . . involving biologic treatments for patients suffering from hemophilia A." (Mot. 6 (citing Chen Decl. Ex. 3 at 2).) The 2017 Delaware Action likewise concerns the same subject

matter, and did so before the New California Complaint. (Chen Decl. Ex. 2 ¶¶ 12-34.) Bayer's attempt to discount the relevance of the 2016 Delaware Action by arguing that the scope of this action is limited to only BAY 94 ignores its prior representations concerning subject matter that is common among the cases. (Br. 17, 18, 21.)

In addition, the 2017 Delaware Action was the first-filed action concerning BAY 94's infringement of the Seven Patents. When Bayer sought a judgment of noninfringement concerning the '749 patent in the Original California Complaint (ECF No. 1), Bayer admittedly knew of the Seven Patents—yet it chose not to raise any claims directed to them. (New California Complaint ¶¶ 1, 86 ("Bayer contacted Nektar in an effort to come to an agreement that would avoid potential future litigation concerning BAY 94 and Nektar's patent portfolio, ***including the Seven Patents-in-Suit and the '749 patent***, for which Bayer initially asserted declaratory claims of non-infringement and invalidity . . . ." (emphasis added)).) Thus, Bayer consciously decided not to raise the Seven Patents in the Original California Complaint—and it only changed its mind after Defendants filed the 2017 Delaware Complaint and after the Original California Complaint was moot. The New California Complaint should not be considered first-filed under these circumstances.

Bayer's argument that the New California Complaint "relates back" to the date of the Original California Complaint fails for multiple reasons. Bayer admits that the Original California Complaint did not include claims regarding any of the Seven Patents. (Br. 3.) Instead, that complaint only had claims concerning the '749 patent, all of which were mooted by Baxalta/Nektar's covenant not to sue that divested this Court of any subject matter jurisdiction. Bayer's assertion that the New California Complaint "cures any purported jurisdictional defect" misses the mark. (Br. 18.) There was no "defect"—instead, the claims were completely moot. ***There are no claims in common*** between the Original California Complaint and the New California Complaint. (*Compare* New California Complaint ¶ 1, *with* Original California Complaint ¶ 1.) Bayer cited no authority that supports its proposition that the Original California Complaint is "automatically" first-filed. (Br. 18-19.) Instead, an amended complaint may relate back to an original complaint's filing date when supplementing insufficient pleadings—which is

different from the situation here, where no claims are in common between the original and new complaints. *See, e.g.*, *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473-74 (2007) (finding jurisdiction satisfied based on supplemental allegations provided in an amended complaint).

Bayer's allegation of a "generalized threat" of infringement does not support its reliance on the relation-back doctrine. (Br. 20.) As discussed above, Bayer knowingly chose to file the Original California Complaint with only the '749 patent. And contrary to Bayer's suggestion, the New California Complaint did not simply "add[]" or "include" the Seven Patents. (Br. 4; Chen Decl. Ex. 3 at 1.) Bayer filed the New California Complaint to assert noninfringement of the Seven Patents—and completely dropped its claims concerning the moot '749 patent—as a purely reactionary move that took place after the 2017 Delaware Action was filed. (*See* Chen Decl. Ex. 3 at 1 (amending the California complaint to assert the Seven Patents "given that they too [were] now in dispute").)

Bayer's reliance on *Korody* and *Nexans* as support for application of the relation-back doctrine is misplaced. (Br. 20.) In *Korody*, the court found that an amendment asserting a "Walker Process" claim ***did not*** relate back to the original antitrust complaint because the amendment "assert[ed] an entirely new claim for relief" and, therefore, "could not possibly give [the appellee] fair notice" of its new claim. *Korody-Colyer Corp. v. General Motors Corp.*, 828 F.2d 1572, 1575-76 (Fed. Cir. 1987). Likewise, *Nexans* is inapposite. In that case, a declaratory judgment count directed to a patent that was not originally asserted was later ***added*** to the originally asserted patents and requested relief. *Nexans, Inc. v. Belden, Inc.*, 966 F. Supp. 2d 396, 400 (D. Del. 2013).

For all these reasons, Bayer's New California Complaint should not be treated as an extension of the Original California Complaint for the first-to-file rule.

### C. Even If the Court Finds this Is the First-Filed Action, Exceptions to the First-to-File Rule Apply Here and Compel Transfer to Delaware

Even if the New California Complaint is found to be first-filed, nevertheless this action should be dismissed or transferred because this case falls within the exceptions to the first-to-file rule. Contrary to Bayer's arguments, exceptions are not found "in a minority of circumstances."

(Br. 18.) Rather, such exceptions "are ***not*** rare, and are made when justice or expediency requires, as in any issue of choice of forum." *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) (emphasis added); *see also Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991). The first-to-file analysis is not subject to "categorical rules," rather, "the trial court weighing jurisdiction additionally must consider the real underlying dispute: the convenience and suitability of competing forums." *Micron Tech., Inc. v. MOSAID Techs., Inc.*, 518 F.3d 897, 905 (Fed. Cir. 2008). The "convenience and availability of witnesses, [the] absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation" are all "sound reason[s]" to depart from the first-to-file rule. *Genentech*, 998 F.2d at 938. Here, jurisdiction is absent for the Baxalta Inc. and Baxalta US Inc. Defendants—they can only be joined in Delaware. Moreover, Delaware is the only forum in which the parties' patent litigations concerning Factor VIII protein products may be heard by the same Court because Bayer is not seeking to transfer the 2016 Delaware Action to this District. Finally, and as discussed in Defendants' Motion and in Section V.E, *infra*, the convenience factors favor transfer.

**D. Bayer's Forum Shopping Justifies Departing from the First-to-File Rule**

Bayer's efforts to maintain two separate, parallel litigations between the parties regarding Factor VIII protein products further justifies overriding any first-to-file consideration. (*See* Mot. 23.) Without explaining why Delaware would be an inappropriate venue, Bayer acknowledges that when it sought to assert the '520 patent—its own patent regarding pegylated Factor VIII—Bayer filed suit in Delaware (Br. 3); but when it sought a judgment of noninfringement concerning BAY 94—its own pegylated Factor VIII product—Bayer filed suit here. (Br. 3.) To explain why it initially filed suit in Delaware, Bayer points to the then-pending *TC Heartland* case. (Br. 23.) Tellingly, Bayer states that it chose Delaware because "*TC Heartland* . . . creat[ed] uncertainty as to venue for patent infringement claims." (Patchen Decl. Ex. 1 at 8.) But *TC Heartland* resolved this uncertainty by restricting appropriate venues for patent cases—thus making Delaware particularly appropriate for these disputes between Bayer and Defendants. *TC Heartland* does not justify Bayer's attempt to split the lawsuits between this District and Delaware.

Bayer's assertion that "[f]orum shopping justifies departure from the first-filed rule only when it is shown to be the ***sole motivation*** for filing suit in the chosen venue" is not the applicable standard. (Br. 22 (citing *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 991 (N.D. Cal. 2011) (emphasis in original)).) In *Barnes & Noble*, the phrase "sole motivation" was not used and, instead, the court found no forum shopping because there the forum was relevant to the parties' dispute. 823 F. Supp. 2d at 993. Such reasoning explains why this District is inappropriate. Bayer fails to show why its non-infringement allegations are related to Baxalta/Nektar's alleged presence in this District. For example, Bayer has not shown: (i) how Baxalta Inc. and Baxalta US Inc. would be subject to jurisdiction in this District; (ii) why Nektar's presence in this district is relevant when Nektar's research and development activities supporting the Seven Patents were carried out in Huntsville, Alabama; and (iii) why non-party witnesses identified in Bayer's New California Complaint should be hauled from Alabama to this District. (*See* Mot. 8-10, 18-20.)

Further, transferring this action to Delaware would not have the "freezing" effect that Bayer alleges. (Br. 22.) As Bayer represented to the Delaware Court, Bayer is "a large life sciences company" that is involved in "many litigations across the country." (Chen Decl. Ex. 3 at 15-16.) Litigating related disputes in Delaware is the more efficient course, both for the litigants and the judicial system, since it avoids the need for duplicative litigation of a host of related factual and scientific issues in two widely separated forums, and it avoids the risk of inconsistent decisions. Bayer cannot credibly argue that litigating two disputes instead of one in Delaware is unfair, especially when Bayer chose Delaware for the 2016 Delaware Action.

**E. The Convenience Factors Favor Transfer**

Bayer fails to demonstrate that this District is a more convenient forum for this dispute. Bayer's argument that its forum should be favored because it is "the plaintiff in this case" should be disregarded. (Br. 23.) Bayer does not explain why deference should be owed to its after-the-fact choice of this District over Bayer's original choice of Delaware. Bayer's "second choice of forum is [] entitled to less deference." *Glaxo Grp. Ltd. v. Genentech, Inc.*, No. C 10-00675 JSW, 2010 WL 1445666, at *4 (N.D. Cal. Apr. 12, 2010).

Additionally, the factors related to the convenience of the parties, the convenience of the witnesses, and ease of access to evidence do not favor this District. Transferring this action to Delaware would allow for coordination of discovery with the 2016 Delaware Action, and would reduce costs, in time and money, for the parties, witnesses, and the court. For example, Bayer does not dispute that the parties and relevant witnesses will have to travel to Delaware for the 2016 Delaware Action, and that Bayer's New Jersey headquarters is located within 100 miles of Delaware and is the "point-of-contact" for the administrative and marketing activities for Bayer's BLA. (Mot. 18-20; ECF No. 36-2 ("Teare Decl.") ¶ 9). Further, both forums have busy dockets, but this factor should be neutral. (*Cf.* Br. 25 (citing *MEC Resources, LLC v. Apple, Inc.*, No. 17-223, 2017 WL 4102450 (D. Del. Sept. 15, 2017) (ordering transfer when "neither party [was] incorporated or has a principal place of business in Delaware")).) With the 2016 Delaware Action, the Delaware Court will become familiar with the subject matter and technological issues concerning pegylated Factor VIII protein products, and there is no need for two courts to develop such familiarity. The Delaware Court's "familiarity with the subject matter of [this] litigation will reduce the expenditure of judicial resources in handling of this matter." *Optical Recording Corp. v. Capitol-EMI Music, Inc.*, 803 F. Supp. 971, 974 (D. Del. 1992).

Bayer fails to establish that this District would be a more convenient forum for Defendants. Bayer ignores that the research and development that concerned or related to the Seven Patents was performed in Nektar's Huntsville, Alabama facility, which is geographically closer to Delaware. (ECF No. 33-19 ("Wilson Decl.") ¶ 7.) Additionally, non-parties specifically named in Bayer's New California Complaint, Dr. Michael Bentley and Dr. Milton Harris, are located in Alabama. (Mot. 19-20.) And Baxalta Inc.'s and Baxalta US Inc.'s principal places of business are in Illinois, but neither has offices in this District.

Bayer relies heavily on its allegation that this District is the more convenient forum for several of its current and former employees. (*See, e.g.*, Br. 24-25.) But Bayer has not stated that it cannot present its current employees at trial, or made any concrete showing that relevant former employees would be unavailable. Moreover, even if "certain of these witnesses [were] unlikely to testify in Delaware, the practical impact of this factor would still be limited, in light of the fact that

so few civil cases today proceed to trial (and at trial, so few fact witnesses testify live)." *Tessera, Inc. v. Broadcom Corp.*, No. 16-379, 2017 WL 1065865, at *9 n.10 (D. Del. Mar. 21, 2017). Thus, Bayer's generalized concerns regarding access to its current employees and former employees should be disregarded. (Br. 24.)

**VI. CONCLUSION**

This action should be dismissed for lack of personal jurisdiction and improper venue, for failure to join indispensable parties, or, in the alternative, transferred to the District of Delaware, where the Seven Patents were already at issue before the New California Complaint was filed and where the related 2016 Delaware Action is proceeding.

Dated: October 31, 2017

Respectfully submitted,

By: /s/ *Jonathan A. Patchen*

Jonathan A. Patchen (SBN 237346)
TAYLOR & PATCHEN, LLP
One Ferry Building, Suite 355
San Francisco, CA 94111

Edgar H. Haug (Admitted *pro hac vice*)
Angus Chen (Admitted *pro hac vice*)
HAUG PARTNERS LLP
745 Fifth Avenue
New York, NY 10151

Attorneys for Defendants
NEKTAR THERAPEUTICS, BAXALTA INCORPORATED, and BAXALTA US INC.