UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BAYER HEALTHCARE LLC,<br><br>       Plaintiff,<br><br>   v.<br><br>NEKTAR THERAPEUTICS, et al.,<br><br>       Defendants. | Case No. 17-CV-05055-LHK<br><br>**ORDER DENYING MOTION TO DISMISS AND GRANTING MOTION TO TRANSFER**<br><br>Re: Dkt. No. 33 |

Plaintiff Bayer Healthcare LLC ("Bayer") filed this suit seeking a declaratory judgment of patent non-infringement. *See* ECF Nos. 1, 30. Before the Court is Defendants' motion to dismiss for lack of personal jurisdiction and improper venue or, in the alternative, to transfer this action to the United States District Court for the District of Delaware. ECF No. 33. Having considered the parties' briefs, the relevant law, and the record in this case, the Court DENIES the motion to dismiss and GRANTS the motion to transfer.

## I. BACKGROUND

### A. Factual Background

Plaintiff Bayer is a Delaware corporation with a principal place of business in Whippany, New Jersey. First Amended Complaint ("FAC"), ECF No. 30, ¶ 3. Defendant Nektar

Therapeutics ("Nektar") is a Delaware corporation with a principal place of business in San Francisco, California. *Id.* ¶ 4. Defendant Baxalta Inc. is a Delaware corporation with a principal place of business in Bannockburn, Illinois. *Id.* ¶ 5. Defendant Baxalta US is a Delaware corporation with a principal place of business in Bannockburn, Illinois. *Id.* ¶ 6; Declaration of Jeffrey Prowda, ECF No. 33-18, ¶ 7.[1] The Court includes additional facts as necessary to the jurisdictional analysis in Section III, *infra*.

Bayer is a global life sciences company whose business includes research and development of drug treatments for hemophilia A, a genetic blood coagulation disorder. FAC ¶¶ 22-23. Patients with hemophilia A have "a deficiency of the functional human Factor VIII, a complex protein that is critical for proper blood coagulation and control of bleeding." *Id.* ¶ 23. At issue in this case are Bayer's pegylated Factor VIII replacement products. "Pegylation is a method by which PEG molecules are attached to active biologic or chemical entities in an effort to impart certain unique properties, such as potentially preventing degradation of the therapeutic product to extend its half-life." *Id.* ¶ 26. In the 1990s and early 2000s, Bayer custom ordered large PEG molecules from Nektar's predecessor-in-interest and Nektar. *Id.* ¶¶ 29-51.

In brief, Bayer accuses Nektar of misappropriating Bayer's confidential information to eventually obtain U.S. Patent No. 7,199,223 (the "'223 Patent"), U.S. Patent No. 7,863,421 (the "'421 Patent"), U.S. Patent No. 8,143,378 (the "'378 Patent"), U.S. Patent No. 8,247,536 (the "'536 Patent"), U.S. Patent No. 8,519,102 (the "'102 Patent"), U.S. Patent No. 8,618,259 (the "'259 Patent"), and U.S. Patent No. 8,889,831 (the "'831 Patent") (collectively, the "Nektar patents-in-suit"). *Id.* ¶¶ 1, 53-65, 103-44. Bayer filed the instant suit seeking a declaration that its Factor VIII replacement product BAY 94-9027 ("BAY 94") does not infringe the Nektar patents-in-suit. *Id.* ¶ 1.

---

[1] The FAC alleges that Baxalta US's principal place of business is in California. However, for the reasons that the Court explains in Section III.A., below, the Court finds that Baxalta's principal place of business is actually in Bannockburn, Illinois.

Case No. 17-CV-05055-LHK
ORDER DENYING MOTION TO DISMISS AND GRANTING MOTION TO TRANSFER

### B.     Procedural History

The procedural history relevant to the instant order spans three cases in two districts.  In December 2016, Bayer filed a suit in the District of Delaware against Baxalta Inc., Baxalta US, and Nektar (collectively, "Baxalta/Nektar") that alleged that Baxalta's Factor VIII protein product, Adynovate, infringes Bayer's U.S. Patent No. 9,364,520.  *Bayer HealthCare LLC v. Baxalta Inc.*, No. 16-1122 (D. Del.); ECF No. 33-2.

On August 30, 2017, Bayer filed its original complaint in the instant case in the Northern District of California.  Bayer sought a declaratory judgment that BAY 94 does not infringe Defendants' U.S. Patent No. 7,858,749 (the "'749 Patent").  ECF No. 1.

On September 15, 2017, Baxalta/Nektar filed an action in the District of Delaware alleging that BAY 94 infringes the Nektar patents-in-suit (the "2017 Delaware Action").  *Baxalta Inc. v. Bayer HealthCare LLC*, No. 17-1316 (D. Del.); ECF No. 33-3.  The two cases in the District of Delaware have been deemed related and are both assigned to Judge Richard G. Andrews.

On September 19, 2017, Baxalta/Nektar provided Bayer with a covenant not to sue Bayer for infringement of the '749 Patent and requested that Bayer dismiss the instant suit.  *See* ECF No. 25 at 2; ECF No. 25-2.

On September 25, 2017, Bayer filed the FAC in the instant case.  The FAC drops Bayer's previous claim based on the '749 Patent and instead seeks declaratory judgment on the same Nektar patents-in-suit that Baxalta/Nektar asserted in the 2017 Delaware Action.

On September 29, 2017, Bayer filed a motion to dismiss the 2017 Delaware Action or, in the alternative, to transfer it to the Northern District of California.  ECF No. 33-4.

On October 10, 2017, Baxalta/Nektar filed the instant motion to dismiss or, in the alternative, to transfer to the District of Delaware.  ECF No. 33 ("Mot.").

On October 13, 2017, Baxalta/Nektar filed an opposition to Bayer's motion to dismiss the 2017 Delaware Action.  *Baxalta Inc. v. Bayer HealthCare LLC*, No. 17-1316, ECF No. 12 (D. Del. Oct. 13, 2017).  On October 20, 2017, Bayer filed a reply.  *Id.* at ECF No. 17.

On October 24, 2017, Bayer filed an opposition to Baxalta/Nektar's motion to dismiss the

instant case. ECF No. 36 ("Opp'n"). On October 31, 2017, Baxalta/Nektar filed a reply. ECF

No. 37 ("Reply").

On January 22, 2018, the Court ordered Baxalta/Nektar to file an unredacted copy of their

2005 license agreement. ECF No. 46. On January 24, 2018, Baxalta/Nektar filed an

administrative motion to file under seal their unredacted 2005 Exclusive Research, Development,

License and Manufacturing and Supply Agreement ("the 2005 Agreement"), as well as several

amendments to the 2005 Agreement and a separate 2008 Exclusive License Agreement ("the 2008

Agreement"). ECF No. 48.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(2)

Where a defendant moves to dismiss a suit for lack of personal jurisdiction pursuant to

Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing that

jurisdiction is proper. *Boschetto v. Hansing,* 539 F.3d 1011, 1015 (9th Cir. 2008). Where, as

here, the defendant's motion is based on written materials rather than an evidentiary hearing, the

plaintiff need only make a prima facie showing of jurisdictional facts to withstand a motion to

dismiss for lack of personal jurisdiction. *Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218,

1223 (9th Cir. 2011) (citing *Brayton Purcell LLP v. Recordon & Recordon,* 606 F.3d 1124, 1127

(9th Cir. 2010)); *see also Celgard, LLC v. SK Innovation Co.,* 792 F.3d 1373, 1378, (Fed. Cir.

2015) ("When the district court's determination of personal jurisdiction is based on affidavits and

other written materials, and no jurisdictional hearing is conducted, the plaintiff usually bears only

a prima facie burden."). At this stage of the proceeding, "uncontroverted allegations in plaintiff's

complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits

must be resolved in plaintiff's favor." *Brayton Purcell,* 606 F.3d at 1127 (internal quotation

marks, citations, and alterations omitted); *see also Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,

566 F.3d 1012, 1017 (Fed. Cir. 2009) (same).

### B.    Personal Jurisdiction

Because the issue of personal jurisdiction in a declaratory action for non-infringement is

Case No. 17-CV-05055-LHK
ORDER DENYING MOTION TO DISMISS AND GRANTING MOTION TO TRANSFER

United States District Court
Northern District of California

"intimately related to patent law," Federal Circuit law governs. *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.,* 444 F.3d 1356, 1361 (Fed. Cir. 2006). "Determining whether jurisdiction exists over an out-of-state defendant involves two inquiries: whether a forum state's long-arm statute permits service of process and whether assertion of personal jurisdiction violates due process." *Autogenomics,* 566 F.3d at 1017. "California's long-arm statute permits service of process to the full extent allowed by the due process clauses of the United States Constitution," so "the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process." *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG,* 848 F.3d 1346, 1353 (Fed. Cir. 2017) (internal quotation marks omitted).

Due process precludes a court from asserting jurisdiction over a defendant unless the defendant has minimum contacts with the forum state such that an exercise of jurisdiction would not offend "traditional conception[s] of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945). The minimum contacts requirement ensures "that nonresidents have fair warning that a particular activity may subject them to litigation within the forum." *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1565 (Fed. Cir.1994) (citations omitted).

The "minimum contacts" requirement can be satisfied in two ways: general jurisdiction or specific jurisdiction. General jurisdiction applies where a nonresident defendant's "affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum state." *Daimler AG v. Bauman,* 571 U.S. 117, 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 131 S. Ct. 2846, 2851 (2011)). Where general jurisdiction is inappropriate, the court may still exercise specific jurisdiction where "the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1350-51 (Fed. Cir. 2002) (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)).

If the minimum contacts requirement is satisfied for general jurisdiction, the inquiry ends.

Case No. 17-CV-05055-LHK
ORDER DENYING MOTION TO DISMISS AND GRANTING MOTION TO TRANSFER

*See Daimler*, 134 S. Ct. at 762 n. 20 (noting that when under general jurisdiction analysis, "if a corporation is genuinely at home in the forum state . . . [a fairness factor analysis] would be superfluous"). On the other hand, when "it has been decided that a defendant purposefully established minimum contacts within the forum State" to sustain specific jurisdiction, "these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would 'comport with fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *Int'l Shoe*, 326 U.S. at 320).

In *Daimler*, the U.S. Supreme Court established that a court may assert general jurisdiction over a nonresident defendant only when the defendant's "affiliations with the State are so 'continuous and systematic' as to render it essentially at home in the forum State." 134 S. Ct. at 761 (quoting *Goodyear*, 131 S. Ct. at 2851); *see also NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1375 (Fed. Cir. 2017) (stating same standard). "[O]nly a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there. 'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'" *Daimler*, 134 S. Ct. at 760 (quoting *Goodyear*, 131 S. Ct. at 2853-54); *see also BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (same). The Court rejected the argument that a nonresident defendant should be subject to general jurisdiction "in every State in which [the defendant] engages in a substantial, continuous, and systematic course of business," finding that such a holding would be "unacceptably grasping." *Daimler*, 134 S. Ct. at 760. Nevertheless, the Court noted that in an "exceptional case," "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id.* at 761 n. 19.

For specific jurisdiction, the Federal Circuit applies a three-part test: "(1) whether the defendant purposefully directed its activities at residents of the forum; (2) whether the claim arises out of or relates to the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324,

1331-32 (Fed. Cir. 2008) (internal quotation marks omitted). "The first two factors correspond with the minimum contacts prong of the [*International Shoe Co. v. Washington*, 326 U.S. 310 (1945)] analysis, and the third factor corresponds with the fair play and substantial justice prong of the analysis." *Id.* (quoting *Inamed*, 249 F.3d at 1360 (internal quotation marks omitted)) (alteration added in *Xilinx*).

## III.  DISCUSSION

Bayer alleges in the FAC that Baxalta US has a principal place of business in California. FAC ¶ 6. Bayer also alleges that the Court has personal jurisdiction over the Baxalta Defendants because the Baxalta Defendants "purposefully direct their activities to residents of this District, have numerous, continuous, and systematic contacts with this District, and therefore, have purposefully availed themselves of the privilege of conducting activities within this District." *Id.* ¶ 14. Furthermore, Bayer alleges that the Baxalta Defendants have employees and manufacturing facilities in California, purchase materials manufactured in this district as part of the product supply chain for the Adynovate product, and sell and market their products in California. *Id.* ¶¶ 14, 16-17. The Baxalta Defendants argue that they are not subject to either this Court's general or specific personal jurisdiction. Mot. at 8-10. The Court first addresses general jurisdiction and then turns to specific jurisdiction.

### A.  The Court Does Not Have General Jurisdiction Over the Baxalta Defendants

Bayer does not explicitly invoke general jurisdiction in the FAC, but Bayer does make two jurisdictional allegations that arguably implicate general jurisdiction. First, Bayer alleges that Baxalta US's principal place of business is in California, FAC ¶ 6, which, if true, would support a finding of general jurisdiction over Baxalta US. *See BNSF*, 137 S. Ct. at 1558. Baxalta US contends that Bayer is mistaken and that Baxalta US's principal place of business is actually in Bannockburn, Illinois. Mot. at 9. In support, Baxalta US offers the Statement of Information that Baxalta US filed with the California Secretary of State, which lists Bannockburn, Illinois, as the location of Baxalta US's principal executive office. *See* ECF No. 33-1 ¶ 6. Baxalta US also offers the declaration of Jeffrey Prowda, the head corporate counsel at Shire Pharmaceuticals LLC. ECF

No. 33-18 ("Prowda Decl."). Both Shire Pharmaceuticals and Baxalta US are wholly owned indirect subsidiaries of Shire plc. *Id.* ¶ 3. Prowda declares that Baxalta US's principal place of business is in Bannockburn, Illinois. *Id.* ¶ 7.

The Federal Circuit has stated that at the motion to dismiss stage, "a district court must accept the *uncontroverted* allegations in the plaintiff's complaint as true and resolve any factual conflicts in the affidavits in the plaintiff's favor." *Autogenomics*, 566 F.3d at 1017 (quoting *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003) (emphasis added in *Autogenomics*)). In the instant case, Defendants have produced evidence that contradicts the allegations in Plaintiff's FAC about Baxalta US's principal place of business. Thus, the Court need not accept as true Plaintiff's allegation about Baxalta US's principal place of business. In addition, Bayer has not offered any evidence, in the form of affidavits or otherwise, to the contrary. As a result, the Court finds that Baxalta US's principal place of business is in Bannockburn, Illinois. Accordingly, the Court does not have general jurisdiction over Baxalta US based on Baxalta US's principal place of business.[2]

Second, Bayer alleges that the Baxalta Defendants have continuous and systematic contacts with this District. FAC ¶ 14. It is not clear from the FAC whether Bayer intended this allegation to invoke general jurisdiction, as the same paragraph of the FAC also contains language typically associated with specific jurisdiction, such as purposeful direction. *See id.* ("This Court has personal jurisdiction over Baxalta Inc. and Baxalta US because they purposefully direct their activities to residents of this District, have numerous, continuous, and systematic contacts with this District, and therefore, have purposefully availed themselves of the privilege of conducting activities within this District."). In any event, Defendants argued in their motion that the Baxalta Defendants are not subject to general jurisdiction and Bayer did not respond to this argument in its opposition. Instead, Bayer only argued that the Baxalta Defendants are subject to specific jurisdiction. *See* Opp'n at 9-14. As such, Bayer has effectively conceded that the Baxalta

---

[2] Bayer concedes in the FAC that Baxalta Inc.'s—as opposed to Baxalta US's—principal place of business in Bannockburn, Illinois. FAC ¶ 5.

Case No. 17-CV-05055-LHK
ORDER DENYING MOTION TO DISMISS AND GRANTING MOTION TO TRANSFER

1    Defendants are not subject to general jurisdiction. *See Shorter v. L.A. Unified Sch. Dist.*, No. CV

2    13-3198 ABC, 2013 WL 6331204, at *5 (C.D. Cal. Dec. 4, 2013) (collecting cases for the

3    proposition that failure to address an argument raised in a motion to dismiss constitutes a

4    concession or waiver).

5         If Bayer had not conceded the lack of general jurisdiction, the Court could still exercise

6    general jurisdiction over the Baxalta Defendants if the Baxalta Defendants' "affiliations with the

7    State are so 'continuous and systematic' as to render [them] essentially at home in" California.

8    *Daimler*, 134 S. Ct. at 761.  However, the Court finds that the allegations in the FAC and

9    opposition—that the Baxalta Defendants have employees and a manufacturing facility in

10   California, maintain a partnership with California-based Nektar, buy products made in California,

11   and sell products in California—are not enough to support a finding that the Baxalta Defendants

12   are "essentially at home in" California.  *NexLearn*, 859 F.3d at 1375 (quoting *Daimler*, 134 S. Ct.

13   at 754).  Merely conducting business in California from a home base in Illinois does not render a

14   company "at home" in California, even when such business generates substantial revenue.  In

15   *Daimler,* the United States Supreme Court held that Daimler AG, the German manufacturer of

16   Mercedes-Benz automobiles, was not subject to general jurisdiction in California "despite its

17   multiple offices, continuous operations, and billions of dollars' worth of sales there."  134 S. Ct. at

18   772 (Sotomayor, J., concurring).  In *BNSF*, the United States Supreme Court held that BNSF was

19   not "essentially at home in" Montana even though BNSF had more than 2,000 employees and

20   more than 2,000 miles of track in Montana.  137 S. Ct. at 1559.  Finally, in *Helicopteros*

21   *Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984), the United States Supreme Court

22   held that "mere purchases, even if occurring at regular intervals, are not enough to warrant a

23   State's assertion of" general jurisdiction.  Under these precedents, the Court concludes that the

24   Baxalta Defendants' contacts with California are not so substantial or of such a quality to render

25   the Baxalta Defendants essentially at home in California.  *Daimler*, 134 S. Ct. at 761 n.19.  Thus,

26   the Court does not have general jurisdiction over the Baxalta Defendants.

27

28

United States District Court
Northern District of California

9

**B.      The Court Does Not Have Specific Jurisdiction Over the Baxalta Defendants**

Where a defendant is not subject to general jurisdiction in the forum state, a district court may nonetheless exercise specific jurisdiction over the defendant if (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to the defendant's activities with the forum, and (3) the assertion of personal jurisdiction is reasonable and fair. *Avocent*, 552 F.3d at 1331-32. "While the plaintiff bears the burden to establish minimum contacts, upon this showing, defendants must prove that the exercise of jurisdiction is unreasonable." *Elecs. For Imaging*, 340 F.3d at 1350.

The Federal Circuit has explained that "[w]hat conduct is suit-related" for the first two parts of the test "depends on 'the relationship among the defendant, the forum, and the litigation,' including specifically the nature of the claim asserted." *Acorda Therapeutics Inc. v. Mylan Pharms. Inc.*, 817 F.3d 755, 759 (Fed. Cir. 2016) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)) (internal quotation omitted). Specifically, what contacts are relevant depends on whether the suit is a patent infringement suit or a suit for declaratory judgment of noninfringement or invalidity. "In the ordinary patent infringement suit, the claim asserted by the patentee plaintiff is that some act of making, using, offering to sell, selling, or importing products or services by the defendant constitutes an infringement of the presumptively valid patent named in suit." *Avocent*, 552 F.3d at 1332. "Thus, for purposes of specific jurisdiction, the jurisdictional inquiry is relatively easily discerned from the nature and extent of the commercialization of the accused products or services by the defendant in the forum. In such litigation, the claim both 'arises out of' and 'relates to' the defendant's alleged manufacturing, using, or selling of the claimed invention." *Id.* "But in the context of an action for declaratory judgment of non-infringement, invalidity, and/or unenforceability, the patentee is the defendant, and the claim asserted by the plaintiff relates to the 'wrongful restraint [by the patentee] on the free exploitation of non-infringing goods . . . [such as] the threat of an infringement suit.'" *Id.* (quoting *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998)) (alterations in original). "Such a claim neither directly arises out of nor relates to the making, using, offering

to sell, selling, or importing of arguably infringing products in the forum, but instead arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit." *Id.* "The relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee 'purposefully directed [such enforcement activities] at residents of the forum,' and the extent to which the declaratory judgment claim 'arises out of or relates to those activities.'" *Id.* (quoting *Breckenridge*, 444 F.3d at 1363) (alterations in original).

Notably, neither the FAC nor the opposition identifies any enforcement activity that the Baxalta Defendants are alleged to have taken in California related to the Nektar patents-in-suit. Instead, Bayer rests entirely on (1) the Baxalta Defendants' commercialization of the Nektar patents-in-suit in California, and (2) the Baxalta Defendants' ongoing obligations pursuant to their licensing agreement with Nektar. *See* Opp'n at 9-13. The Court addresses these grounds in turn.

### 1. Efforts to Commercialize a Patent Are Not Relevant Contacts in the Declaratory Judgment Context

Bayer alleges that the Baxalta Defendants have a variety of contacts in California related to the commercialization of the Nektar patents-in-suit. Specifically, Bayer alleges that the Baxalta Defendants "purchase materials (e.g., polyethylene glycol polymers ("PEG")) from Nektar that are manufactured in this District for a portion of the product supply chain for Adynovate." FAC ¶ 16. "In exchange, [the Baxalta Defendants] are responsible for development and commercialization of Adynovate and remit substantial royalty payments to Nektar in this District in the form of: escalating royalties between 4-6 percent on global net revenue of Adynovate up to $1.2 billion in revenue, 13% royalty for revenue above $1.2 billion, and additional tiered revenue milestone payments based upon global net revenue of Adynovate." *Id.* Bayer alleges that the Baxalta Defendants "have also purposefully directed their activities at consumer-residents of this forum in a systematic and continuous manner," including by marketing and selling their products in California. *Id.* ¶ 17; Opp'n at 7. In addition, at the time that Bayer filed the FAC, the Baxalta Defendants had manufacturing facilities and employees in California. FAC ¶ 14; Opp'n at 6-7.

With regard to these commercialization efforts, Federal Circuit precedent squarely states

Case No. 17-CV-05055-LHK
ORDER DENYING MOTION TO DISMISS AND GRANTING MOTION TO TRANSFER

that efforts to commercialize a patent are not relevant contacts for the purposes of a specific jurisdiction analysis in the declaratory judgment context. *See Autogenomics*, 566 F.3d at 1020 ("only enforcement or defense efforts related to the patent rather than the patentee's own commercialization efforts are to be considered for establishing specific personal jurisdiction in a declaratory judgment action against the patentee"); *Avocent*, 552 F.3d at 1336 ("[A] defendant patentee's mere acts of making, using, offering to sell, selling, or importing products—whether covered by the relevant patent(s) or not—do not, in the jurisdictional sense, relate in any material way to the patent right that is at the center of any declaratory judgment claim for non-infringement, invalidity, and/or unenforceability."). Specifically, because a declaratory judgment action does not arise out of or relate to commercialization efforts, commercialization efforts will not satisfy the second prong of the specific jurisdiction test. *See Avocent*, 552 F.3d at 1332 (A declaratory judgment action "neither directly arises out of nor relates to the making, using, offering to sell, selling, or importing of arguably infringing products in the forum, but instead arises out of or relates to the activities of the defendant patentee in enforcing the patent."). Thus, the Federal Circuit has explained that commercialization efforts "may in the aggregate justify the exercise of *general* jurisdiction over the patentee, they do not establish a basis for *specific* jurisdiction in this context." *Id.* at 1336.

The Federal Circuit's decision in *Radio Systems Corp. v. Accession, Inc.*, 638 F.3d 785 (Fed. Cir. 2011), is instructive. In that case, the plaintiff, Radio Systems Corporation, had a principal place of business in Tennessee, while the defendant, Accession, was based in New Jersey. *Id.* at 787. Accession's president and sole employee, Mr. Sullivan, sent letters and emails and made telephone calls to Radio Systems "designed to interest the company in licensing" Mr. Sullivan's patent for a portable pet access door. *Id.* at 787-88. Mr. Sullivan also traveled to Tennessee to demonstrate his invention and signed a nondisclosure agreement that contained a Tennessee forum selection clause. *Id.* at 787-88, 792. The Federal Circuit held that "Mr. Sullivan's attempts to interest Radio Systems in a business transaction relating to his product were not 'enforcement or defense efforts.' Instead, Mr. Sullivan's correspondence with Radio Systems

12

was focused on generating a market" for his product. *Id.* at 790. "The fact that Mr. Sullivan focused on Radio Systems in his effort to commercialize his invention therefore d[id] not render his activities in Tennessee sufficient for the exercise of specific personal jurisdiction" in Radio Systems's later declaratory judgment case. *Id.*

Similarly, in *Avocent*, the Federal Circuit rejected the plaintiff's argument that the defendant was subject to specific jurisdiction in a declaratory judgment case based on the defendant's sales of goods in the forum state. 552 F.3d at 1338. Specifically, the plaintiff alleged that plaintiff's products were available for sale in the forum state, that the defendant purposefully directed the products to the forum state through direct sales activities, and that the products were offered for sale in the forum state through the internet and local retailers. *Id.* at 1327. The Federal Circuit held that "the mere sale of defendant's products—whether covered by the patents in suit or not—is not sufficient to establish specific personal jurisdiction in a declaratory judgment suit." *Id.* at 1338.

Likewise, in *Red Wing Shoe*, 148 F.3d at 1357-58, the defendant commercialized its patent in the forum state through thirty-four non-exclusive licensees, "all of which sold products in" the forum state and six of which maintained retail stores there. *Breckenridge*, 444 F.3d at 1364. The Federal Circuit held "that the mere receipt of royalty income from sales in the forum state was insufficient to ground personal jurisdiction" in a declaratory judgment action." *Id.* (describing holding of *Red Wing Shoe*).

Finally, in *Autogenomics*, the plaintiff, a California company, brought a declaratory judgment action against the defendant, a British company. 566 F.3d at 1014. The plaintiff alleged that the defendant's representatives flew to California to attempt to negotiate a licensing agreement and that the defendant entered into non-exclusive licenses with about ten California companies. The plaintiff also alleged that the defendant entered into a joint venture with a California company that included a supply agreement in which the defendant purchased supplies from the California company. *Id.* at 1015. Representatives of the defendant also attended three scientific conferences in California. Finally, the defendant sold products to a California company.

*Id.* at 1015-16. Applying *Avocent*, the Federal Circuit held that the plaintiff "ha[d] failed to allege sufficient activities 'relat[ing] to the validity and enforceability of the patent' in addition to the cease-and-desist communications" to support specific jurisdiction over the defendant. *Id.* at 1021 (quoting *Avocent*, 552 F.3d at 1336 (second alteration in original)).

Accordingly, in the instant case, the Baxalta Defendants' activities in California related to the commercialization of the Nektar patents-in-suit—including buying and manufacturing precursor materials, selling Adynovate, and remitting royalty payments to Nektar—cannot confer specific jurisdiction over the Baxalta Defendants in this declaratory judgment action because the declaratory judgment action does not arise out of or relate to the Baxalta Defendants' commercialization activities. *See Autogenomics*, 566 F.3d at 1021; *Avocent*, 552 F.3d at 1334-36.

**2. The Baxalta/Nektar Licensing Agreement Does Not Confer Specific Jurisdiction**

Bayer next contends that "[t]he Federal Circuit has held that [the specific jurisdiction] test is met where an out-of-state defendant collaborates with an in-state defendant pursuant to an exclusive license agreement." Opp'n at 9 (citing *Breckenridge*, 444 F.3d at 1365-67; *Akro Corp. v. Luker*, 45 F.3d 1541, 1548-49 (Fed. Cir. 1995)). However, Bayer's formulation of this principle omits several important concepts from the precedents that make a difference here.

First, in all of the relevant Federal Circuit cases, the defendant took some type of enforcement action—usually sending a cease and desist letter into the forum. *See New World Int'l, Inc. v. Ford Global Techs., LLC*, 859 F.3d 1032, 1036 (Fed. Cir. 2017) (defendant sent three cease and desist letters into forum); *Autogenomics*, 566 F.3d at 1019 (district court found that email and in-person communications were analogous to cease and desist letters); *Avocent*, 552 F.3d at 1327 (defendant sent three cease and desist letters); *Breckenridge*, 444 F.3d at 1360 (defendant sent three cease and desist letters); *Red Wing*, 148 F.3d at 1357 (defendant sent three letters alleging infringement); *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1457 (Fed. Cir. 1997) (defendant sent three letters alleging infringement and repeatedly and publicly threatened to sue); *Viam Corp. v. Iowa Exp.-Imp. Trading Co.*, 84 F.3d 424, 430 (Fed. Cir. 1996) (defendants had initiated suit to enforce the same patent against another party in the same district);

*Akro*, 45 F.3d at 1542 (defendant sent seven warning letters).

The Federal Circuit has determined that "send[ing] a cease and desist letter to a potential plaintiff in [a] particular forum" satisfies the first two parts of the specific jurisdiction test in a declaratory judgment action because sending the letter constitutes purposeful direction and a declaratory judgment action "arises out of or relates to" a cease and desist letter. *New World*, 859 F.3d at 1037. "Under the third part of the test, however, [the Federal Circuit] has held that it is improper to predicate personal jurisdiction on the act of sending ordinary cease and desist letters into a forum, without more." *Id.* at 1037-38. However, "if the defendant patentee purposefully directs activities [in addition to cease and desist letters] at the forum which relate in some material way to the enforcement or the defense of the patent, those activities may suffice to support specific jurisdiction." *Avocent*, 552 F.3d at 1336. As a result, in some cases, the Federal Circuit has then determined whether the terms of an exclusive license agreement with a licensee who operates in the forum state are enough, when combined with the cease and desist letters, to make the exercise of jurisdiction reasonable under the third part of the specific jurisdiction test. *New World*, 859 F.3d at 1038 (citing *Avocent*, 552 F.3d at 1334).

Here, Bayer does not allege that the Baxalta Defendants took any affirmative act of enforcement in California related to the Nektar patents-in-suit. This lack of enforcement distinguishes the instant case from the Federal Circuit precedents discussed above, in which the defendants had sent cease and desist letters or had taken analogous enforcement action. Bayer cites no case where a court has held that a license agreement, without some additional affirmative act of enforcement, is sufficient to confer specific jurisdiction in a declaratory judgment case brought by a third party. Nor is the Court aware of such a case. Indeed, the United States Supreme Court's recent decision in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (2017), suggests otherwise. In *Bristol-Myers Squibb*, the United States Supreme Court held that Bristol-Myers Squibb's "decision to contract with a California company" to distribute its product nationally was not a sufficient basis for California courts to exercise specific jurisdiction over Bristol-Myers Squibb where there were no allegations

15

that Bristol-Myers Squibb engaged in any relevant acts in California. *Id.* at 1783. Applied here, *Bristol-Myers Squibb* suggests that the licensing agreement, standing alone as the only contact related to the declaratory judgment action, would not support specific jurisdiction over the Baxalta Defendants.

Even if an exclusive license agreement could confer jurisdiction without an accompanying act of enforcement, Bayer's characterization of the Federal Circuit's treatment of exclusive license agreements still paints with too broad a brush. The Federal Circuit explained in *New World* that "the mere existence of an exclusive license does not support a finding of specific jurisdiction." 859 F.3d at 1038. Rather, "the question of specific jurisdiction over a nonresident patent holder in a case involving an exclusive license 'requires close examination of the license agreement.'" *Id.* at 1039 (quoting *Breckenridge*, 444 F.3d at 1366). "For example, a license that establishes no relationship between a patent holder and a licensee beyond the payment and receipt of royalty income is not sufficient, because a declaratory judgment action does not typically 'arise from or relate to' a patent holder's efforts to license or commercialize its patent." *Id.* at 1038. "On the other hand, a license that obligates the patent holder to defend or enforce the patent may be sufficient to establish specific personal jurisdiction, because a declaratory judgment action typically arises from the patent holder's actions to enforce or defend its patent in the forum." *Id.* "What matters, then, is whether the agreement between the patent holder and the exclusive licensee imposes an obligation on the patent holder to enforce or defend the patent on behalf of the licensee that is engaged in exploiting the patent rights in the forum state." *Id.* at 1039.

In *Akro*, for example, "the nonresident patent holder (1) granted a resident licensee, an Ohio corporation, the right to sue alleged infringers on the patent holder's behalf and (2) agreed to 'defend and pursue any infringement against [the] patent.'" *New World*, 859 F.3d at 1038 (quoting *Akro*, 45 F.3d at 1543). "The patent holder therefore incurred continuing obligations in the forum related to the enforcement or defense of the licensed patent: The resident licensee was free to sue third parties for infringement, which the patent holder was then obligated to 'defend and pursue'; the patent holder assumed a complementary obligation to affirmatively pursue

potential infringers of the patent; and the patent holder was obligated to defend any action challenging the patent." *Id.* The Federal Circuit thus held that even though the patentee did not itself do business in Ohio, "the patent holder's continuing obligation to pursue any infringement clearly contemplated enforcement against any infringers in Ohio, where the licensee was based and competed with others." *Id.* Similarly, in *Breckenridge*, where the patentee's obligations were not phrased as strongly as the patentee's in *Akro*, the patentee nonetheless assumed the obligation to discuss any enforcement action with its licensee in good faith "and then to cooperate in any subsequent action." *Id.* at 1039.

By contrast, in *New World*, the Federal Circuit found that a license agreement that contained an indemnity provision related to third-party infringement claims and a provision that prevented the patentee from "unreasonably refus[ing] a request by [the licensee] to enforce" patents did not create enough of an obligation on the patentee to support specific jurisdiction. *See id.* at 1040-42.

The Baxalta/Nektar license agreements are distinguishable from the agreements that the Federal Circuit has found to support specific jurisdiction in at least two ways. First, in each of the relevant Federal Circuit cases, "the patentee enters into an exclusive license or other obligation relating to the exploitation of the patent by [a] licensee or contracting party in the forum, and the patentee's contractual undertaking may impose certain obligations to enforce the patent against infringers. By such conduct, the patentee may be said to purposefully avail itself of the forum and to engage in activity that relates to the validity and enforceability of the patent." *Avocent*, 552 F.3d at 1336. In other words, the patentee has purposefully availed itself of the forum state, in part by assuming enforcement or defense obligations that likely involve litigation in the forum state, where the licensee is exploiting the patent. In the instant case, by contrast, it is the licensee who is potentially being subjected to personal jurisdiction in a forum state where the patentee is based. It is not clear from the precedents whether the logic in the Federal Circuit's cases necessarily covers this reverse situation, where it is less obvious that a licensee exploiting a patent in another state has purposefully availed itself of the patentee's home state. In any event, the

Court does not rely on this distinction, because the terms of the Baxalta/Nektar license agreements do not impose the level of obligation on either the patentee or the licensee that would be sufficient to confer specific jurisdiction here.

Specifically, unlike the exclusive licensing agreements that the Federal Circuit has found to confer jurisdiction when combined with cease and desist letters, neither the 2005 Agreement nor the 2008 Agreement obligates the Baxalta Defendants to defend or enforce the patents. *See id.* at 1038-40. Under the 2005 Agreement, the Baxalta Defendants in some situations "have the right, but not the obligation, to bring and control" or to "carry out" an action to enforce the patents. *See* 2005 Agreement, ECF No. 48-4, at 17.2.2.B and 17.2.3A. In addition, if Nektar determines that the Baxalta Defendants are a necessary party in an enforcement action, the Baxalta Defendants consent to be joined. *Id.* at 17.2.2.A and 17.2.3.B. The 2005 Agreement does not, however, require that the Baxalta Defendants actively participate or even cooperate in such an action. *See id.* Similarly, under the 2008 Agreement, the Baxalta Defendants in some circumstances "have the right, but not the obligation, to bring and control" an enforcement action. *See* 2008 Agreement, ECF No. 48-21, at 3.3.a.

Far from being a continuing obligation related to patent enforcement of the type that were at issue in *Breckenridge* or *Akro*, these license agreement terms explicitly disclaim imposing any enforcement or defense obligation on the Baxalta Defendants. *See* 2005 Agreement at 17.2.2.B and 17.2.3A (stating that the Baxalta Defendants have "the right, but not the obligation" to bring suits); 2008 Agreement at 3.3.a (same). Thus, the only mandatory obligation that the Baxalta Defendants assumed related to enforcement or defense of the patents is to consent to be joined if Nektar deems joinder necessary. Unlike *Akro*, the Agreements do not require the Baxalta Defendants to affirmatively pursue any enforcement or defense actions. Unlike *Breckenridge*, the Agreements here do not even require the Baxalta Defendants' continuing cooperation or active participation in a suit brought by Nektar. As such, the Court finds that the obligations created by the 2005 and 2008 Agreements are more akin to those in *New World*, where the Federal Circuit found no specific jurisdiction, than those in *Akro* or *Breckenridge*.

18

United States District Court
Northern District of California

Thus, even if the terms of a license agreement standing alone could be enough to confer specific jurisdiction, the terms of these particular license agreements are not enough. *See New World*, 859 F.3d at 1043 ("although the license to the licensee doing business in the forum is exclusive, the license does not impose a sufficient obligation on the patent holder regarding the enforcement of the patent rights to subject the patent holder to specific jurisdiction there"). Accordingly, the Court finds that it lacks specific jurisdiction over the Baxalta Defendants.

## C. Jurisdictional Discovery is Not Warranted

In its opposition, Bayer makes a passing request for jurisdictional discovery if the Court determines that Bayer has not sufficiently pleaded sufficient facts to support personal jurisdiction. Opp'n at 14. Ninth Circuit law controls this request for discovery. *See Patent Rights Protection Grp. LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1371 (Fed. Cir. 2010). In the Ninth Circuit, "discovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (quoting *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)). But a court can deny jurisdictional discovery "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," *Am. W. Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989) (quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977)), or where the request for discovery is "based on little more than a hunch that it might yield jurisdictionally relevant facts," *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).

Here, the Court finds that permitting jurisdictional discovery would be futile. Defendants largely do not dispute the contacts with California that Bayer identified as relevant to the Court's analysis. Rather, Defendants argued that those contacts were not related to enforcing the patent, as the Federal Circuit's precedent requires. The Court's decision turned on the lack of any alleged enforcement activities in California, not on the sheer volume of the Baxalta Defendants' commercial contacts with California. Bayer does not specify what kind of information it

19

anticipates obtaining in jurisdictional discovery. *Cf. Patent Rights*, 603 F.3d at 1371 (finding abuse of discretion where district court denied jurisdictional discovery to plaintiff who had submitted a declaration identifying facts "that made it apparent that additional discovery may unearth facts sufficient to support the exercise of personal jurisdiction"). Indeed, the Court is unable to imagine what type of relevant enforcement activity jurisdictional discovery might uncover about which Bayer does not already know. For example, Bayer would surely already be aware if the Baxalta Defendants had sent Bayer cease and desist letters in California. Whether the Baxalta Defendants have filed court actions to enforce the Nektar patents-in-suit would also be publicly available information. Moreover, Bayer now has access to unredacted copies of the licensing agreements between Nektar and the Baxalta Defendants. Accordingly, the Court finds that "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Am. W. Airlines*, 877 F.2d at 801. Bayer's request for jurisdictional discovery is thus DENIED.

## D.    Transfer Pursuant to 28 U.S.C. § 1631

Defendants ask that the Court transfer this case to Delaware if it is not dismissed. Defendants invoke 28 U.S.C. § 1404(a), but because the Court has determined that it lacks personal jurisdiction over the Baxalta Defendants, the Court finds that 28 U.S.C. § 1631 is the applicable statute. "Under a provision of the Federal Courts Improvement Act, 28 U.S.C. § 1631, if a court finds that there is a want of jurisdiction the court shall transfer the action to any other such court in which the action could have been brought 'if it is in the interest of justice.'" *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990). "Normally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is 'time-consuming and justice-defeating.'" *Id.* (quoting *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 467 (1962)).

Here, the instant action could have been brought in the District of Delaware. This fact is evidenced most directly by the 2016 Delaware Action, in which Bayer sued Baxalta/Nektar in Delaware. Bayer has not sought to transfer that case. Moreover, all the parties are incorporated in

Case No. 17-CV-05055-LHK
ORDER DENYING MOTION TO DISMISS AND GRANTING MOTION TO TRANSFER

Delaware, which means that the District Court in Delaware has general jurisdiction over all the parties. *See Goodyear*, 564 U.S. at 924.

The Court also finds that it is in the interest of justice to transfer this case to Delaware for at least two reasons. First, as the Ninth Circuit stated in *Miller*, "dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating." 905 F.2d at 262. It also produces unnecessary costs for the parties. Second, the Court finds that it is in the interest of justice to transfer this case to Delaware so that it can be heard by the same judge who is already hearing the parties' two related Delaware actions. There is significant overlap between the instant case and the 2017 Delaware Action. Transfer would thus decrease the risk of inconsistent rulings and would save judicial time and resources because only one court will need to learn the subject matter underlying the patents. *See Chang v. Biosuccess Biotech, Co.*, No. 14-CV-425-LHK, 2014 WL 12703706, at \*3 (N.D. Cal. May 30, 2014).

IV.     CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion to dismiss and DENIES Bayer's request for jurisdictional discovery. The Court GRANTS Defendants' motion to transfer the case to the District of Delaware pursuant to 28 U.S.C. § 1631. The Clerk shall transfer the case to the District of Delaware and close the case file in this district.

**IT IS SO ORDERED.**

Dated: March 12, 2018

_Lucy H. Koh_
_____
LUCY H. KOH
United States District Judge

Case No. 17-CV-05055-LHK
ORDER DENYING MOTION TO DISMISS AND GRANTING MOTION TO TRANSFER